UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ALEXANDER CHARLES WHITE and
PAUL DOUGLAS VANDIVIER,

Defendants.

COMPLAINT

Plaintiff Securities and Exchange Commission alleges and states as follows:

INTRODUCTION

1.      From approximately October 2012 until approximately January 2016, Defendants, Alexander Charles White and Paul Douglas Vandivier, solicited investors and managed other sales agents who solicited and raised money from investors in unregistered, fraudulent securities offerings conducted by Aegis Oil, LLC ("Aegis") and 7S Oil & Gas, LLC ("7S").  Neither White nor Vandivier held any securities licenses; were registered with the Commission; nor were they associated with Commission-registered broker dealers or qualified for an exemption.  White and Vandivier were thus not permitted to sell securities.

2.      Both Aegis and 7S offered and sold unregistered securities in the form of "joint venture units" in oil and gas development projects located in Texas.  Through White, Vandivier and other sales agents, Aegis raised approximately $35 million from about 250 investors nationwide, and 7S raised approximately $7 million from at least 70 investors.  White, through his work at Aegis and 7S, received more than $7 million in commissions, which he divided

between himself and sales agents under his management, and Vandivier received approximately $900,000 which he divided between himself and sales agents under his management.

3.      By engaging in this conduct, Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)].   Unless enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

4.      The Commission also seeks disgorgement of all ill-gotten gains, including prejudgment interest thereon; an order directing the Defendants to pay civil money penalties; and any other relief that may be necessary and appropriate.

## DEFENDANTS

5.      White, age 45, last known residence in Evans, GA, is not, and has never been, registered with the Commission, the Financial Industry Regulatory Authority ("FINRA"), or any state securities regulatory authority.

6.      Vandivier, age 58, last known residence in Coconut Creek, FL, is not, and has never been, registered with the Commission, FINRA, or any state securities regulatory authority.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

8.      This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida because, among other things, (1) White managed two sales teams located in the Southern District of Florida, including Vandivier's sales team; and (2) Vandivier's sales office was located in Coconut Creek, Florida.

9.      In connection with the conduct alleged in the Complaint, Defendant, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in the interstate commerce, and of the mails.

## FACTUAL BACKGROUND

### A.      Unregistered Securities Offerings

10.      Between October 2010 and October 2015, Aegis raised a total of approximately $35 million from about 250 investors nationwide through the fraudulent, unregistered offers and sales of securities in a continuous series of 15 offerings.  See SEC v. Aegis Oil, LLC, et al., Civil Action No. 16-cv-62335-BB (S.D. Fla., Sept. 29, 2016).

11.      Between November 2014 and July 2016, 7S, which previously served as the field operator for the Aegis projects, began offering and selling its own investments in oil well projects to the public.  During this period, 7S raised approximately $7 million from at least 70 investors through the fraudulent, unregistered offers and sales of securities in a continuous series of 8 offerings.  See SEC v. 7S Oil & Gas, LLC, et al., Civil Action No. 17-cv-22914-UU (S.D. Fla., Aug. 1, 2017).

12.      The securities sold in all offerings were investment contracts in the form of "units" in oil and gas related "joint venture" projects located in Texas.  Aegis and 7S offered and sold their securities to the public primarily through a network of sales agents, who would cold-call potential investors throughout the country using lead lists.  Aegis generally paid its sales agents a 35% commission on each sale, which came out of the investor's principal investment. 7S paid its agents commissions ranging from 20% to 35%, also out of investor money.  Neither Aegis nor 7S disclosed to investors the payment of commissions higher than 10%.

13.     Sales agents pitched the Aegis and 7S securities to potential investors based on promises of exaggerated rates of return, while minimizing the risks associated with the investment.  For example, some of the agents told investors that they would receive returns on their investment, ranging from 15% to 200% on the Aegis units and 20% to 30% on the 7S units. Some investors were also told by agents that these investments had virtually no risk because, among other things, the projects were already up and running and the wells were located in areas that have produced millions of barrels of oil.

14.     After the initial phone contact with potential investors, sales agents would facilitate getting investors the companies' offerings materials.  In Aegis, the sales agents would send the investor's contact information to the company so that a package of materials, including a private placement memorandum ("PPM") could be mailed out to the investor.  The agents in 7S would direct prospects to that company's website and issue them a password in order to access certain password-protected parts of the website, including access to the PPMs.  The PPMs for both offerings contained standard boilerplate cautionary language about the investment and the "high degree of risk" involved, but did not contain any information that cured the misstatements and omissions that were made to investors.

### B.     White's Unregistered Securities and Broker Activity

15.     From approximately October 2012 through approximately January 2016, White managed a team of sales agents that solicited and raised money for the Aegis and 7S offerings. White's marketing team consisted of approximately a dozen sales agents, with offices in several states including South Florida.  His agents used lead lists to solicit investors, but also had a list of "ready-made clients" available to possibly invest.  White was paid a 35% commission for each

investor his team brought on in the Aegis offering and a 28% to 35% commission for each investor in the 7S offering.

16.     White also served as a "team leader" for other Aegis and 7S sales agents in various states.  White was the team leader for Aegis from about October 2012 until about March 2015 and for 7S from around mid-2015 until January 2016.  As team leader, White trained and instructed other sales agents about what to say to investors.  He would also help them close on sales calls with investors.  For this work as it relates to 7S, White was paid an additional 2% commission on all investor proceeds raised by his team.

17.     Between October 2012 and July 2013, White received approximately $2.9 million in commission payments from the Aegis offerings.  In addition, between February 2013 and March 2015, he received approximately $3.94 million in commissions from Aegis through CC Excel Energy, LLC, a now defunct company that White controlled.  Once White received these commission payments from Aegis, he paid out a portion of it to his sales team.

18.     Between July and October 2015, White received approximately $32,600 in commission payments from the 7S offering.  Additionally, between August 2015 and July 2016, he received $197,000 in commission payments from 7S through Conservative Surveyors, LLC, another company he controlled.  Once White received these commission payments from 7S, he paid out a portion of it to his sales team.

### C.     Vandivier's Unregistered Securities and Broker Activity

19.     From at least February 2013 until about mid-2015, Vandivier managed a sales team that solicited investors for Aegis and 7S through his now defunct company, Aegis Marketing, Inc. ("Aegis Marketing").  Vandivier hired and managed all of the sales people who worked for him, and trained sales agents on how to sell the investment opportunities.  Vandivier

located potential investors through "oil leads" he bought, and by calling prospects he already knew about from his own client list.

20.     Vandivier helped agents close on sales calls by speaking with investors directly and telling them about the Aegis and 7S investment opportunities.  Vandivier would also take clients to see the oil fields in Texas when they requested.  Through his company, Aegis Marketing, Vandivier solicited and raised money from numerous investors for Aegis and at least one investor for 7S.

21.     Between February 2013 and at least August 2014, Vandivier received commissions totaling approximately $870,000 from the Aegis offerings.  Once Vandivier received the commission payments, he paid out a portion of it to his sales agents.  In addition, Vandivier received at least $23,000 in commissions from the 7S offering in October 2015.

## CLAIMS FOR RELIEF

### COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

22.     The Commission repeats and realleges paragraphs 1 through 21 of this Complaint.

23.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities sold by the Defendants as described in this Complaint and no exemption from registration existed with respect to these securities.

24.     From approximately October 2012 until approximately January 2016, Defendants directly and indirectly:

> (a)     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b)     carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

(c)     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the Commission as to such securities.

25.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violation of Section 15(a)(1) of the Exchange Act

26.     The Commission repeats and realleges paragraphs 1 through 21 of this Complaint.

27.     From approximately October 2012 until approximately January 2016, Defendants directly or indirectly, by the use of the mails or the means or instrumentalities of interstate commerce, while acting as or associated with a broker or dealer, effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Commission as a broker or dealer or when they were not associated with an entity registered with the Commission as a broker-dealer.

28.     By reason of the foregoing, Defendants directly and indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act, [15 U.S.C. § 78o(a)(1)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged and:

### I.
### Permanent Injunction

Issue a Permanent Injunction, restraining and enjoining Defendants, their agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### II.
### Disgorgement and Prejudgment Interest

Issue an Order directing Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

### III.
### Civil Penalty

Issue an Order directing Defendants to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### IV.
### Further Relief

Grant such other and further relief as may be necessary and appropriate.

**V.**
**Retention of Jurisdiction**

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

**DEMAND FOR JURY TRIAL**

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Dated: August 13, 2018

Respectfully submitted,

By:     /s/ *Russell Koonin*_____
Russell Koonin
Senior Trial Counsel
Fla. Bar No. 474479
Direct Dial: (305) 982-6385
Facsimile (305) 536-4154
E-mail: kooninr@sec.gov

Raynette R. Nicoleau
Senior Counsel
Fla. Bar No. 278210
Direct Dial: (305) 982-6308
Facsimile (305) 536-4146
Email:  nicoleaur@sec.gov

Shan Chang
Counsel
S.D. Fla. No.: A5502239
Direct Dial: (305) 982-6319
Facsimile (305) 536-4146
Email:  changsh@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154